UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:12-CV-799-H

JAIR UNITED INC., PLAINTIFF

V.

INERTIAL AIRLINE SERVICES, INC.
and INERTIAL AEROSPACE SERVICES, INC., DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiff, JAIR United Inc., brought suit against Inertial Airline Services, Inc. and Inertial Aerospace Services, Inc. (collectively, "Defendants"), for claims arising out of a lease agreement between the parties. Defendants presently move to dismiss the four-count complaint, contending that each count is time-barred. The motion has been fully briefed and is now ripe for review. For the reasons stated herein, the Court will grant Defendants' motion to dismiss.

I.

Plaintiff developed certain LCOSS System Test Equipment ("Test Equipment") that facilitates repair of laser-guided weapons systems on specific military aircraft. Plaintiff states that its Test Equipment is unique, and as such, is worth approximately $3.25 million. On March 3, 2000, Defendants agreed to lease and Plaintiff agreed to provide the Test Equipment for Defendants' use in its business of repairing customers' weapons systems (the "Agreement"). Pursuant to the Agreement, Defendants would pay $4,500 for each weapons system repaired using the Test Equipment, with payment due within seven working days of receipt of any portion of the payment from the Defendants' customer. Thus, Defendants were not obligated to pay Plaintiff the price per use of the Test Equipment unless and until Defendants' customers paid

Defendants for their services. The Agreement also obligated Defendants to return the Test Equipment to Plaintiff upon the termination of the Agreement and prohibited Defendants from reverse-engineering or copying the Test Equipment, either themselves or assisting third parties to do so.

The Agreement terminated formally on March 3, 2003. According to Plaintiff, Defendants repaired at least 97 weapons systems, but only paid Plaintiff for 47. This means that, pursuant to the Agreement, Defendants owe Plaintiff $225,000 for the 50 unreimbursed uses of the Test Equipment. Plaintiff further posits that Defendants have failed to return the Test Equipment, despite Plaintiff's demand. Finally, Plaintiff asserts that Defendants caused a third party to reverse-engineer, copy, reproduce or utilize the Test Equipment in a way that wrongfully duplicates its capability.

On February 5, 2005, Plaintiff's counsel sent written demand for payment and return of the Test Equipment advancing similar allegations to those in the complaint (the "Demand Letter").[1] Months later, Plaintiff's counsel sent another letter threatening to file suit on these claims. However, Plaintiff waited until November 28, 2012 to file suit. In its complaint, Plaintiff alleges breach of contract for failure to reimburse Plaintiff for using the Test Equipment and for failure to return the Test Equipment (Count I), conversion of the Test Equipment (Count II), declaratory judgment as to the rights to the Test Equipment (Count III), and breach of

---

[1] Defendants argue that the Court, in deciding its motion to dismiss, can consider the Demand Letter and a subsequent letter, even though motions to dismiss are typically confined to the pleadings and to those documents incorporated by reference and attached to the complaint. Plaintiff did not attach the Demand Letter to the complaint. "Under certain circumstances, however, a document that is not formally incorporated by reference or attached to a complaint may still be considered part of the pleadings. This occurs when a document is referred to in the complaint and is central to the plaintiff's claim." *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999). Defendants argue that Plaintiff referenced the Demand Letter in the complaint when it stated that Plaintiff demanded return of the Test Equipment, and that the Demand Letter is central to Plaintiff's claim. While the Court doubts this characterization, Plaintiff does not contest Defendants' arguments here. Assuming then that Plaintiff agrees with Defendants' characterization of the documents, the Court will examine the Demand Letter for purposes of deciding this motion to dismiss.

contract for permitting a third party to reverse-engineer the Test Equipment (Count IV). Defendants argue that the Court must dismiss each count as time-barred.

Defendants move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, because Plaintiff did not timely file the action. A court may grant such a motion where "it affirmatively appears from the face of the complaint that the time for bringing the claim has passed." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). Because the statute of limitations differs depending on the nature of the claim brought, the Court will address each count separately.

## II.

Defendants argue that Article 2A of the Kentucky[2] UCC governs the Agreement that is the focus of Plaintiff's claims for breach of contract in Counts I and IV. According to the Kentucky commercial code, Article 2A "applies to any transaction, regardless of form, that creates a lease." KY. REV. STAT. ANN. § 355.2A-102. Article 2A provides a four-year statute of limitations for actions arising under a lease contract. KY. REV. STAT. ANN. § 355.2A-506. The date for accrual of the statute of limitations is "when the act or omission on which the default or breach of warranty is based is or should have been discovered by the aggrieved party, or when the default occurs, whichever is later." *Id.* Because Plaintiff's counsel sent the Demand Letter alleging the same breach of contract theories advanced in the present case, Defendants argue that February 5, 2005 is the latest date on which the cause of action accrued. Thus, the November 2012 filing date for this lawsuit makes Plaintiff's claims untimely.

Plaintiff contests only one of these legal conclusions: that Article 2A governs Counts I and IV. Plaintiff presents two arguments in support of its position that Article 2A does not apply, and in so doing, separates the claims into two groups. First, Plaintiff states that the

---
[2] Neither party contests that Kentucky law governs the contract.

3

contract was not a lease agreement, so Article 2A's four-year statute of limitations does not govern its failure to reimburse claim arising out of the Agreement in Count I. Second, Plaintiff argues that the agreements to return the Test Equipment, asserted in Count I, and to prevent reverse-engineering, asserted in Count IV, were ancillary to the agreement to lease the Test Equipment, and therefore, again, not covered by Article 2A.

A.

Plaintiff first argues that the UCC does not apply to its failure to reimburse claim in Count I, because the Agreement, despite its label, is not a true lease for goods. According to Plaintiff, while the Agreement permits the lease of the Test Equipment, the principal purpose of the contract lies elsewhere. Essentially, Plaintiff posits that the Agreement is a mixed contract for services and lease of goods, in which the services provided are the predominant factor. The UCC does not govern such contracts. *See MidAmerican Distribution, Inc. v. Clarification Tech., Inc.*, 807 F. Supp. 2d 646, 666 (E.D. Ky. 2011) (holding that the mixed contract at issue was predominantly for services, so the UCC was not applicable). Plaintiff premises its argument upon the Agreement's compensation arrangement, whereby Defendants did not have to pay Plaintiff until Defendants' customers paid them for their services. If Defendants did not use the Test Equipment, or if their customers did not pay for Defendants' services, then Defendants owed Plaintiff nothing under the contract. Accordingly, Plaintiff maintains that the contract largely becomes operative when services are rendered.

Cases construing the Kentucky UCC as it pertains to mixed contracts of goods and services use language intimating that Kentucky follows the predominant factor test. *See MidAmerican Distribution, Inc.*, 807 F. Supp. 2d at 666 ("Thus, in Kentucky, '[t]he UCC applies to transactions in goods, including mixed contracts for goods and services where the

4

predominant factor is the sale of goods.'" (quoting *Marley Cooling Tower Co. v. Caldwell Energy & Envtl., Inc.*, 280 F. Supp. 2d 651, 659 (W.D. Ky. 2003))). According to a federal court construing Ohio commercial law, which also adopted Article 2A of the UCC[3] and applies the predominant factor test to mixed contracts, "[t]he question is whether the purchaser's ultimate goal is to acquire a product or produce a service." *Mecanique C.N.C., Inc. v. Durr Envtl., Inc.*, 304 F. Supp. 2d 971, 977 (S.D. Ohio 2004). This question is typically reserved for the jury, but the jury "should only resolve the issue if there is a true factual dispute, not if the division between goods and services merely involves a close call." *Id.* at 976.

Here, identifying the predominant factor in the contract at issue is quite easy. The Agreement, titled "Lease Agreement," and made between Plaintiff, called Lessor, and Defendants, called Lessee, solely provides in the "Agreement" section of the contract that "LESSEE does hereby lease from LESSOR the TEST EQUIPMENT for use at LESSEE'S place of business (premises) subject to the terms, provisions, conditions, and covenants set forth in this AGREEMENT." ECF No. 1-1. Contrary to Plaintiff's contentions, the principal purpose of the contract was to lease the Test Equipment. That Defendants would eventually use the Test Equipment to service other customers does not turn the underlying contract into a mixed contract for goods and services. If that were the case, then all contracts for leasing goods to entities that render services would be removed from the UCC, a consequence which the Kentucky General Assembly certainly did not intend when it adopted Article 2A. The Agreement is at its core a lease agreement, notwithstanding the payment provisions. Accordingly, Article 2A's four-year statute of limitations operates to bar Plaintiff's claim for breach of contract for failure to reimburse, brought over seven years after the accrual date.

---

[3] *See Info. Leasing Corp. v. Chambers*, 789 N.E.2d 1155 (Ohio Ct. App. 2003) (applying Article 2A to a lease contract).

B.

Second, Plaintiff argues that the UCC does not govern the failure to return equipment claim in Count I and reverse-engineering claim in Count IV, because these claims are collateral and ancillary to the agreement to lease the Test Equipment. Plaintiff relies on KRS § 355.2A-503(4) in support, which states, "Rights and remedies on default by the lessor or the lessee with respect to any obligation or promise collateral or ancillary to the lease contract are not impaired by this article." Plaintiff's argument seems to overlook that this provision relates only to rights and remedies collateral or ancillary to the lease *contract*, not just the lease. The lease contract, as defined in Kentucky's UCC, is "the total legal obligation that results from the lease agreement as affected by this article and any other applicable rules of law." KY. REV. STAT. ANN. § 355.2A-103(l). A lease agreement in turn is "the bargain, with respect to the lease, of the lessor and the lessee in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance as provided in this article." KY. REV. STAT. ANN. § 355.2A-103(k).

The total obligation that resulted from the lease bargain included prohibiting Defendants from reverse-engineering the Test Equipment or allowing a third party to use or examine the Test Equipment except as necessary to prove to customers that Defendants possessed the equipment and expertise to repair their customers' systems. The bargain also provided that upon termination, Defendants were obligated to return the Test Equipment. While these provisions did not effectuate the lease itself, they were part of the negotiations that influenced the parties ultimately enter into the Agreement, as they are embodied within the contract. Plaintiff cites two cases that illustrate the difference between agreements that are part and parcel of the lease

6

agreement, and agreements that are ancillary thereto, although Plaintiff cites them in support of the opposite conclusion.

In *O'Neill v. Steppat*, 270 N.W.2d 375 (S.D. 1978), buyers and sellers signed a purchase agreement for the sale of a business. The buyers executed a promissory note covering all the equipment, tools and merchandise in connection with the business, essentially financing the contract. The Court specified that the "Sellers have sought to recover on the note, not on the contract. That the note might have been given in payment for a contract is not relevant in this action." *Id.* at 376. The Court held that the promissory note is collateral or ancillary to the contract for sale. *Id.* at 377. These were two separate agreements with distinct purposes and goals.

On the other hand, in *Foodtown v. Sigma Marketing Systems, Inc.*, 518 F. Supp. 485, 487-88 (D.N.J. 1980), the Court found that overcharges on the contract price were not so distinct from the actual contract as to make the statute of limitations under the UCC inapplicable. There, the defendant allegedly overcharged the plaintiff for the purchase of certain dinnerware pursuant to a contract executed by the parties. The Court held that because a contract is the "total legal obligation which results from the parties' agreement," the overcharges could not be considered collateral or ancillary to the contract for sale. *Id.* (quoting N.J. STAT. ANN. § 12A:1-201). The Agreement here is similar to the overcharges in *Foodtown*.

Regardless, the Court cannot find a meaningful distinction between the lease contract and the agreements pertaining to equipment return and reverse-engineering. The promises to return the Test Equipment and to prohibit the reverse-engineering of the Test Equipment are not collateral or ancillary to the Agreement itself. Accordingly, the UCC governs these claims, and Article 2A's four-year statute of limitations bars recovery on Counts I and IV.

7

III.

Kentucky provides a two-year statute of limitations for conversion claims. KY. REV. STAT. ANN. § 413.125 ("An action for the taking, detaining or injuring of personal property, including an action for specific recovery shall be commenced within two (2) years from the time the cause of action accrued."). Defendants argue that this statute of limitations applies to Plaintiff's conversion claim, which accrued either on March 3, 2003, when the Agreement terminated, or on February 5, 2005, when Plaintiff's counsel sent Defendants the Demand Letter. With either accrual date, Plaintiff's conversion claim is time-barred. Plaintiff is silent as to this argument in its Response. The Court finds Defendants' arguments reasonable and in accordance with the law. Therefore, Plaintiff's conversion claim (Count II) fails.

IV.

In Count III, Plaintiff seeks a declaratory judgment that it maintains ownership rights over the Test Equipment, that Defendants unlawfully possess the Test Equipment, and that Plaintiff is entitled to return of the Test Equipment. "A request for declaratory relief is barred to the same extent that the claim for substantive relief on which it is based would be barred." *Int'l Ass'n of Machinists & Aerospace Workers v. Tenn. Valley Auth.*, 108 F.3d 658, 668 (6th Cir. 1997). The Sixth Circuit adopted this rule, because "[a] contrary rule would allow a plaintiff to 'make a mockery of the statute of limitations by the simple expedient of creative labeling.'" *Id.* (quoting *Gilbert v. City of Cambridge*, 992 F.2d 51, 57 (1st Cir. 1991)). Defendants argue that because each of the other counts is time-barred, Plaintiff's request for declaratory judgment must similarly be denied. Plaintiff does not contest the viability of this rule; rather, Plaintiff generally asserts that the underlying claims are not time-barred. Because the Court has found that the relevant statute of limitations bars each of the underlying substantive claims, the Court holds that

the declaratory judgment claim is likewise barred.  Accordingly, the Court must dismiss Count III.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss is SUSTAINED and Plaintiff's claims are DISMISSED WITH PREJUDICE.

This is a final order.

cc:  Counsel of Record